**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

CRISTINA RENEE CHAFFIN                                                                         PLAINTIFF

v.                                      No. 3:09CV00002 JLH

STEPHEN J. EICHERT, D.O.; THE MEDICAL
ASSURANCE COMPANY, INC.; and JOHN DOE                                        DEFENDANTS

**OPINION AND ORDER**

This is a medical malpractice case in which the Court has jurisdiction based on diversity of citizenship.

Stephen J. Eichert, D.O., a neurosurgeon, performed surgery on the lumbar spine of Cristina Renee Chaffin on June 14, 2006, in Jonesboro, Arkansas. The surgery has been described as an endoscopic left L4-5 decompression, discectomy, interbody fusion, and segmental fixation with spire plates and fluoroscopy. The segmental fixation used a Medtronic CD Horizon Spire, a device that is contraindicated for a patient with a known defect in the pars interarticularis. Chaffin's back pain continued following the surgery, and four months later she was treated by a neurosurgeon in Memphis, Tennessee, who performed corrective surgery, which included removing the Medtronic Spire and using, instead, bilateral pedicle screw placement at L4 and L5 with spacing rod instrumentation, which is the appropriate device for surgery of the sort at issue when the patient has a pars defect. Chaffin contends that she had a pars defect when Eichert performed surgery and that Eichert was negligent. A jury found for Eichert.

Chaffin has now filed a motion for new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, arguing that the jury verdict is against the clear weight of the evidence. The Eighth Circuit has said:

> In determining whether a verdict is against the weight of the evidence, a trial court can rely on its own reading of the evidence – it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict. However, the court is not simply to substitute its judgment for the jury's, granting a new trial whenever it would find differently than the jury has. The court should reject a jury's verdict only where, after a review of all the evidence giving full respect to the jury's verdict, the court is left with a definite and firm conviction that the jury has erred.

*Ryan v. McDonough Power Equip., Inc.*, 734 F.2d 385, 387 (8th Cir. 1984) (internal quotation marks and citations omitted); *see also Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 869 (8th Cir. 2011) (citing *Ryan*). The key question is "whether a new trial is necessary to prevent a miscarriage of justice." *Maxfield v. Cintas Corp.*, 563 F.3d 691, 694 (8th Cir. 2009).

There are two closely related but distinct issues on which the resolution of this case turns. The first issue is whether Chaffin had a pars defect on June 14, 2006, when Eichert performed surgery. It is undisputed that, if she had a pars defect at that time, then Eichert should not have used the Medtronic Spire. The second issue is whether the fact that Eichert failed to discover the existence of the pars defect means that he was negligent, *i.e.*, that he failed to possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by neurosurgeons in Jonesboro, Arkansas, or similar localities. Ark. Model Jury Instruction - Civil 1501 (2011). Chaffin's motion addresses the first issue but says little about the second.

Eichert testified that there was no pars defect at L4 when he performed surgery on June 14, 2006, but the clear weight of the evidence is to the contrary. As noted, Chaffin's back pain continued until she had corrective surgery using procedures appropriate for a patient with a pars defect. In addition, an x-ray on June 22, 2006, showed listhesis (a slippage) of L4 over L5 and spondylosis (a fracture) at L4. In October 2006, the Memphis neurosurgeon performed corrective surgery using the procedure that all parties agreed is the appropriate procedure when the patient has

a pars defect, and that surgery was successful. Moreover, three weeks before Eichert performed surgery—on May 23, 2006—Chaffin's primary care physician ordered an abdominal CT scan due to problems unrelated to her back problems, and the radiologist who read that CT scan reported, "There are bilateral pars interarticularis defects at L4." Thus, the clear weight of the evidence supports the conclusion that Chaffin had a pars defect when Eichert performed surgery.

The evidence on the second issue is not so clearly in Chaffin's favor. Eichert testified that he did not review the abdominal CT scan performed on May 23, 2006. Instead, he reviewed a CT scan of the spine conducted in April of 2004, an MRI of the lumbar spine conducted on January 13, 2005, and an MRI of the lumbar spine conducted on October 28, 2005. He testified that he did not see a pars defect on any of the studies that he examined. The reports by the radiologists for the April 2004 CT scan, the January 2005 MRI, and the October 2005 MRI do not mention a pars defect. Jonathan Citow, M.D., a neurosurgeon called as an expert witness by the defense, testified that he examined the April 2004 CT scan, the January 2005 MRI, and the October 2005 MRI, and he saw no pars defect in any of those studies. Citow also testified that the exercise of reasonable care does not require neurosurgeons to review abdominal CT scans. Citow testified further that the exercise of reasonable care did not require Eichert to obtain an additional CT scan before performing surgery because he had the 2004 CT scan and two MRIs in 2005 with consistent symptoms. Citow testified that he found no negligence in Eichert's performance.

In contrast, John Lancon, M.D., a neurosurgeon called by the plaintiff as an expert witness, testified that the pars defect was visible on the October 2005 MRI and that it was negligent of Eichert not to have seen it. Lancon agreed with Citow, however, that neurosurgeons do not review abdominal CT scans.

3

Lancon testified that the fact that the radiologists said nothing about a pars defect did not mean that they saw no pars defect; it meant only that they said nothing about it. Citow, on the other hand, testified that the fact that the radiologists did not report seeing a pars defect means that they did not see a pars defect. The radiologists were not called to testify.

From this evidence, the jury could reasonably draw several conclusions. First, the evidence required the jury to conclude that Eichert's failure to review the May 2006 abdominal CT scan was not negligent—both of the expert witnesses so testified. Consequently, while the jury could view the abdominal CT scan as evidence that a pars defect existed at L4 at the time Eichert performed surgery, the jury could not and obviously did not conclude that Eichert was negligent for failing to review that CT scan. Next, the jury reasonably could conclude that Eichert's failure to see a pars defect on the April 2004 CT scan, the January 2005 MRI, and the October 2005 MRI did not prove that he was negligent. As noted, Citow testified that he examined that CT scan and the two MRIs, and he saw no pars defect. Moreover, the reports of the radiologists on those three studies made no mention of a pars defect. The greater weight of the evidence shows that if the radiologists had seen a pars defect they would have recorded it in the reports. From the fact that Citow and the radiologists did not see a pars defect on the April 2004 CT scan, the January 2005 MRI, and the October 2005 MRI, the jury reasonably could conclude that Eichert was not negligent for failing to see a pars defect in those studies.

Eichert also testified that he directly examined the vertebrae at L4-L5 when he made the incision and began the surgery. Chaffin argues that this testimony suffices to establish that Eichert was negligent for failing to see the pars defect. The testimony of her expert, Lancon, does not support her argument. Lancon testified that Eichert's incision was to the left of the vertebrae so he

4

could not have seen the pars on the right side, and, even on the left side, his view could have been obscured by joint capsules and muscle. Lancon was not present at the surgery and testified that he could not know the extent of what Eichert saw relative to the pars. Lancon did not testify that Eichert's failure to see the pars defect after making the incision means that he was negligent. Citow was not asked and did not testify as to whether a neurosurgeon's failure to see a pars defect after making the incision was negligent.

In keeping with Arkansas law and without objection, the Court instructed the jury, "In determining the degree of skill and learning the law required in deciding whether Dr. Eichert applied the degree of skill and learning which the law required, you may consider only the expert testimony provided by the neurosurgeons."[1] *See* Ark. Model Jury Instruction - Civil 1501 (2011). No expert testified that Eichert was negligent in failing to see a pars defect after he made the incision.

In summary, Chaffin is correct that the clear weight of the evidence established that she had a pars defect at the time Eichert performed surgery. If that is all she had to prove to prevail, the Court would grant her motion for a new trial; but that is not all she had to prove. Chaffin also had to prove that Eichert's failure to discover the pars defect was negligent. It was not contrary to the clear weight of the evidence for the jury to conclude that Eichert was not negligent. The weight of the evidence indicates that a reasonably careful neurosurgeon might not have seen the pars defect in the April 2004 CT scan, the January 2005 MRI, and the October 2005 MRI. While the abdominal

---

[1] Arkansas law requires expert testimony to establish the standard of care and a breach thereof in medical malpractice cases, except when the asserted negligence lies within the jury's comprehension as a matter of common knowledge. Ark. Code Ann. § 16-114-206 (West 2011). *Cf. Pry v. Jones*, 253 Ark. 534, 487 S.W.2d 606 (1972). Chaffin does not argue that jurors would know as a matter of common knowledge that a reasonably careful neurosurgeon could see a pars defect after performing the incision.

CT scan of May 23, 2006, showed the pars defect, it was undisputed that neurosurgeons do not review abdominal CT scans. Finally, Chaffin did not prove through expert testimony that Eichert was negligent for failing to see the pars defect after making the incision. In short, there was a pars defect and Eichert missed it, but that fact does not mean that he was negligent: doctors are not subject to strict liability, even when they miss something important.

That Eichert missed the pars defect does not mean that the jury's verdict in his favor represents a miscarriage of justice; it does not mean that the verdict is contrary to the clear weight of the evidence; it does not mean that the verdict was a product of prejudice; and it does not mean that the jury failed to understand the facts or the law. While Lancon saw the pars defect on the October MRI, that does not *ipso facto* prove that Eichert fell below the standard of care when he failed to see it. The radiologist who read the MRI evidently failed to see the pars defect on that MRI, as did Citow. Moreover, Lancon testified, in effect, that a reasonably careful neurosurgeon might not see a pars defect on direct examination of the vertebrae after performing the incision. The court is not left with a definite and firm conviction that the jury erred.

## CONCLUSION

While Chaffin is correct that the clear weight of the evidence shows that she had a pars defect at the time Eichert performed the surgery, the clear weight of the evidence does not show that Eichert's failure to discover the pars defect before or at the time of surgery means that he was negligent. Therefore, the motion for new trial is denied. Document #180.

IT IS SO ORDERED this 8th day of August, 2011.

*J. Leon Holmes*
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE